Catron, Ch. J.
delivered the opinion of the court.
Mrs. Denson had acquired by will, from her former husband, Ingraham, a tract of land lying in Williamson: and she died intestate, seized in fee, leaving two half brothers on the mother’s side, the Lytles, and brothers and sisters of the whole blood, the Nichols; and the question *423 is, did the maternal half brothers inherit equally with the brothers and sisters of the whole blood.
The statute of descents of 1784 (Sec. 3,) declares, that if any person die intestate seized of lands in fee, and without issue, the estate shall descend to the brothers, as well those of the half blood, as those of the whole blood; and the act of 1797, ch. 14, lets in the sisters equally with the brothers, in the same general terms. Take the language of the statutes in disconnexion with the common law canons of descents, and no reason would seem to exist to raise a doubt, but that the half blood in the maternal line were included; every plain reader would pronounce William and Archibald Lytle, the brothers of the half blood of Mrs. Denson, entitled to share equally with the brothers and sisters of the whole blood. This being the plain import of the statute, the principal inquiry is, has the legislature made any exception cutting off the maternal half brothers. The first exception is founded in the same section with the enacting clause, that if lands descend on the part of the father, and the heir die, transmitting them a second time, having no issue, but leaving brothers or sisters of the half blood on the father’s side, and brothers or sisters also of the half blood on the mother’s side, the brothers and sisters of the paternal line shall inherit to the exclusion of those in the maternal line, and in common with brothers and sisters of the whole blood. And so, if the lands descend on the part of the mother, the maternal line shall exclude the paternal; so that the inheritance shall continue in the line of the first purchaser. This exception has no reference to new-purchased lands, and a first descent; and such was Mrs. Denson’s case. Had the lands in controversy been cast upon her by descent, from her father Nichol, then the exception would exclude the Lytles.
The seventh section of the act contains a second exception: that if a child die seized of lands in fee, acquired by purchase, leaving no issue, brothers or sisters, *424 or the descendants of such, then the father shall take if living: if not, the mother, (by the act of Oct. 1784, not in fee, but for life,) and on her death, the collateral heirs in the paternal line shall exclude those of the maternal line.
Mrs. Denson’s case is not within the letter of this exception; still it has been supposed it furnished a key to the mind of the legislature, from which it must be inferred that the maternal half blood is excluded. It was holden by judge Haywood, in Butler vs. King, (2 Yerg. 166,) that by the acts’of April and October, 1784, it was never intended that brothers or sisters of the half blood on the side of the mother should inherit in any case; that the statutes exclusively related to the half blood in the paternal line, in reference to new-purchased lands, as well as to those descended from the father. In that case, the father devised lands in fee to his two sons, and died; the mother married again and had issue, a daughter; then one of the sons died, leaving his brother of the whole blood and the maternal half sister; and the question was, whether the sister took with the brother as heir, and judge Haywood gave it as his opinion she did not; that the child of the mother could not take whilst there were heirs in the paternal line: otherwise by the death of the daughter, the land might descend to the female stock, or even to strangers, which was never intended; that the male stock was favored in every case.
The opinion is ingenious, but we fear almost an incomprehensible reading of the statute by judge Haywood, not the court. No case on the title was presented to the court, which decided it had no jurisdiction to try title in a case of mere partition; that the title must be settled at law, and ordered the petition to be dismissed. The other three judges, composing the court with judge Haywood, formed no opinion on the statutes of descent, *425 having had no jurisdiction to place a construction on THEM. (a)
Haywood, Brown, and other distinguished lawyers of North Carolina, held that the statutes of 1784, with its explanation and amendments of the fall session of that year, (ch. 10,) should be construed in connexion with the common law canons of descent; that in no other way could its true meaning be arrived at. This reasoning, after twenty years of litigation, was found by the courts of that State partly true, but mainly falacious. The question brought before the courts in Swann vs. Mercer, (2 Hayw.) in 1805, and in Doe vs. Shepard, and Ballard vs. Hill, on the same title in 1819, (3 Murph.) was, whether the half blood in the maternal line of the purchasing ancestor, could inherit in any case. The doctrine was examined with a depth of research and a degree of ability by the counsel on the respective sides, that challenges admiration; that, perhaps, has no equal in the American courts, on descents; and, that nothing short of the most tedious and anxious litigation could produce. The recondite construction contended for by judge Hay *426 wood and Mr. Brown, for a time prevailed; Swann vs. Mercer, having been decided in exclusion oí the maternal line; but on a bill of review, the decree was reversed, and eventually, in 1819, the construction was settled according to the general law terms of the statute, that the maternal stock took equally with the paternal.
The construction assumed by judge Haywood, that the maternal half blood were not included in the statute of descents, relies for support upon the sixth and seventh canons of descent. 1st. That the collateral heir of the person last seized, must be the next collateral kinsman of the whole blood. 2 Bl. Com. 224 and 227. As if the father have two sons, A and B, by different wives, they shall never inherit of each other, but the estate shall rather escheat to the lord. And,
2nd. That in collateral inheritances, the male stock shall be preferred to the female; that is, kindred derived from the blood of the male ancestor, however remote, shall be admitted before those from the blood of the female, however near; unless the lands have in fact descended from the female. 2 Bl. Com. 234. The argument is, that by the first canon recited, the whole blood take of course; and by the other, the descendants on the mother’s side are excluded, and were not provided for by the statute, This supposition is met by the conclusive fact, that before the passage of the act, the half blood of the male and female stocks were equally excluded by the sixth canon of descents, and the letting in either was an independent original provision unknown to the common law. The words of the statute are general; it declares that on the death of any person without issue, his fee simple estate shall descend to his brothers, or to his sisters, as well those of the half blood, as those of the whole blood. To hold that the half brothers on the mother’s side could not inherit, would be in violation of the plain import of the words used by the legislature; would be making an exception the legislature did not see *427 proper to make, and one this court has often holden it : 1 , -r,, , ,. r . has no power to make, lhe estate descending irom the first purchaser being uncontrolled by the common law, the Lytles took by the general words of the statute equally with the brothers and sisters of the whole blood of Mrs. Denison. Such has been the final result of the adjudications of North Carolina, and which we follow.
The consequences of this decision are not so readily foreseen; it seems to proceed upon grounds very simple and plain, bit when the principle of letting in the half blood, generally, is applied to cases of remoter collaterals, by the rule the statute prescribes, it will be found to result in most curious consequences; as when we have to trace up to the first purchasing ancestor, and then find the nearest heir, pursuing the male and female stocks, and half or whole blood, without discrimination, the heir may often be found of no kindred to the purchaser; and this was the controlling consideration that led to judge Haywood’s opinion in Butler vs. King. Suppose A dies, leaving a younger half-sister on the mother’s side his heir; then the mother dies, the father marries and has children, and the half-sister dies, and her brothers &c. on the father’s side of the half blood take. In such a case, the estate descends to strangers in blood to the acquiring ancestor, if ancestor he may be called. This, however, matters little in a country where real estate and personal, are almost equally regarded. How it will be with posterity, it is-immaterial to us; if the course of descents be unsuited to the then condition of society, it is for the legislature to alter the law, not this court. All rules of succession are the creatures of the civil polity, (2 Bl. Cam. 210,) mere positive rules of property, which every country and age must frame to suit its circumstances.
Judgment affirmed.

 The Reporter argued the cause of Butler vs. King, against the claim of the half blood. He did not contend for the construction of the statute as given by judge Haywood. The devise in that case was to the two only sons of the testator; and the positions he assumed and endeavored to enforce, were, 1st. That lands acquired by purchase descended to the brothers and sisters of the whole and half blood equally. 2nd. That when they were derived by descent from the father, that then the brothers and sisters of the half blood on the part of the mother were excluded. And 3d, That in this case they were vested by descent in the two sons of the testator; for, although the father devised the land to his two sons, yet, as he gave by his will precisely the same interest which the law would have given without it, by descent, the will was inoperative, and they took the lands by descent. It was the understanding of the Reporter, at that time, derived from conversation with some member or members of the court, that the result of judge Haywood’s opinion was concurred in, but that it was concurred in for the reasons above stated, that is, because the court believed the sons took by descent from the father; in which case, the sister of the half blood on the part of the mother, was excluded by the proviso -contained in the act.